IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DONALD PATRICK WARNOCK,

        Plaintiff,

                              CIVIL ACTION
  vs.                            No. 06-3297-SAC

KANSAS DEPARTMENT OF CORRECTIONS,
et al.,


        Defendants.


ORDER


    This matter is before the court on a civil action filed by a prisoner in state custody. Plaintiff has submitted the initial partial filing fee, and the court grants leave to proceed in forma pauperis.[1] Plaintiff's motion to amend the complaint (Doc. 10) is granted, and the court has considered

---

[1] Plaintiff is advised that he remains obligated to pay the balance of the statutory filing fee of $350.00 in this action. The Finance Office of the facility where he is incarcerated will be directed by a copy of this order to collect from plaintiff's account and pay to the clerk of the court twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full. Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee, including but not limited to providing any written authorization required by the custodian or any future custodian to disburse funds from his account.

that pleading.

In this action, plaintiff alleges the defendants discriminated against him by forcing him to undergo substance abuse treatment due to his disability of drug addiction and alcoholism. He claims that as a result, the defendants excluded him from participation in a work release program, which he claims violates anti-discrimination provisions contained in the Americans with Disabilities Act (ADA).

Finally, plaintiff alleges defendants' use of "carrot-and-stick" tactics constitutes cruel and unusual punishment.

**Background**

In January 2004, plaintiff was successfully discharged from Mirror, Inc. The discharge summary reflects a prognosis of "Fair, based on his progress in treatment but also taking in account his relapse history." Doc. 10, Ex. M., p. 8.

By a letter dated January 24, 2005, the Kansas Department of Corrections advised plaintiff that although he had completed treatment previously, due to his guarded prognosis, his referral to additional treatment was appropriate. (Doc. 1, Ex. B.)

In August 2005, plaintiff was remanded to the custody of the Secretary of Corrections as a violator. Due to his history of drug addiction and alcoholism, including the influence of alcohol in his 2005 parole violation, he was required to

complete the Chemical Dependency Recovery Program (CDRP) before being considered for work release placement. From November 2005 through June 2006, he participated in the Building Maintenance Vocational Program. A program review was completed in late July at plaintiff's request and made the following recommendation:

> Completing unscheduled review at offender's request to add work release. With an LSIR [Level of Service Inventory-Revised] overall score of 22, offender meets criteria for placement in pre-release prior to work release. SATX [substance abuse treatment] remains to be completed. (Doc. 1, Ex. D.)

In August 2006, plaintiff was placed in the pre-release program. He was on a waiting list for placement in the substance abuse treatment program. A September program review stated:

> Mr. Warnock is assigned to pre-release class, where he appears to be doing well.... He still has SATX to be completed on his program before he could be considered for work release. I commend Mr. Warnock for the positive progress he has demonstrated and encourage him to continue .... (Doc. 1, Ex. E.)

On September 8, 2006, the Department of Corrections advised plaintiff in correspondence, "While we agree that work release might have been a desirable program, we believe that substance abuse programming was more important." (Doc. 1, Ex. C.)

On September 26, 2006, Warden Emmalee Conover prepared a grievance response addressing plaintiff's referral to substance

abuse programming as follows:

> A review of his history and records reflects inmate Warnock was previously incarcerated and return to the system as a violator. His RDU report reflects he claims to have completed substance abuse treatment at least twice previously. However, part of his parole violation in 2005 was for use of alcohol.
>
> While at RDU, the LSI-R was completed with inmate Warnock. His overall score is 22 with a score of 5 in the alcohol/drug domain.
>
> IMPP [Internal Management Policy and Procedure] 10-104 section II A 1a states "Male inmates ... with a total risk score of at least 20 but less than 28 and who have a criminogenic need for substance abuse treatment as indicated by a score of 3 or higher in the Alcohol and Drug domain of the LSI-R assessment" shall qualify for the standard substance abuse treatment program, which is CDRP.
>
> Section of III B 1a of the same policy states "Treatment priority will be based on custody classification, time remaining to serve, number of previous treatment episodes, and highest Alcohol/Drug Domain LSI-R scores."
>
> IMPP 11-113 section IV A states: "The RDU LSI-R assessment shall be used for substance abuse treatment screening for offenders who have served less than five (5) years."
>
> Inmate Warnock was received at WCF on 9/26/05. He participated in the Building Maintenance Vocational Program from 11/1/05 - 6/27/06 when he completed the program. He then entered the Pre-Release Program on 8/21/06 where he is currently assigned. He is on the waiting list for placement in CDRP pursuant to his history and policy as stated above. (Doc. 1, Ex. J.)

**Discussion**

**The ADA Claim**

The Americans with Disabilities Act is intended "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA bans discrimination based upon disability in availability of services, programs, or activities of a public entity. 42 U.S.C. § 12132.[2] This provision applies to state prisons. Pennsylvania Dept. of Corr. v. Yeskey, 524 U.S. 206, 210 (1998)("State prisons fall squarely within the statutory definition of 'public entity,'").

Those courts which have examined prisoners' ADA claims in the context of the denial of parole, work release, or furloughs have distinguished between decisions made on a categorical basis and those involving an individualized assessment of a prisoner's circumstances.

In considering a claim by state prisoners with a history of substance abuse who alleged that state parole officials adhered to an unwritten policy of automatically denying parole to such

---

[2] § 12132 provides: Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity.

prisoners, the Ninth Circuit determined that while a parole board may not categorically exclude a class of disabled people from consideration for parole based upon their disability, "Title II does not categorically bar a state parole board from making an individualized assessment of ... an inmate by taking into account the inmate's disability.... A person's disability that leads one to a propensity to commit crime may certainly be relevant in assessing whether that individual is qualified for parole."  Thompson v. Davis, 295 F.3d 890, 898 n.4 (9th Cir. 2002), cert. denied, 538 U.S. 921 (2003).

Similarly, in considering claims by a group of prisoners that prison officials had refused to consider them for work release, furloughs, and other programs due to their history of drug and alcohol addiction, the U.S. District Court for the Eastern District of Michigan held plaintiffs had failed to establish that prisoners with a history of substance abuse had been automatically denied parole or other benefits.  Ghashiyah v. Wisconsin Parole Comm'n, 2006 WL 2690372, * 4-5 (E.D. Wis. 2006)(applying Thompson).

In the present case, the record shows the plaintiff was required to undergo additional substance abuse treatment based upon his scores on an assessment tool used by the Department of Corrections.  The use of that assessment is prescribed by IMPP

6

11-113, and the screening is tailored to prisoners who have served less than five years. (Doc. 1, Ex. J.) This scheme is significantly different from the sort of categorical, automatic denial of access to programs which might implicate the ADA.

Because the record shows plaintiff was referred to substance abuse treatment based upon an individualized assessment rather than upon a policy or practice which categorically denied work release, the court concludes the plaintiff has failed to state a claim for relief under the ADA.

**The Eighth Amendment Claim**

Plaintiff also asserts his rights under the Eight Amendment were violated by the actions of the Kansas Department of Corrections, which he claims falsely led him to believe that he would be able to participate in work release. (Doc. 1, p. 1.) The court liberally construes this claim to assert that plaintiff was subjected to unconstitutional conditions of confinement.

To prevail on his claim under the Eighth Amendment, plaintiff must show that he was subjected to a deprivation that denied him the "'minimal civilized measure of life's necessities.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994)(quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The evaluation of such a claim must weigh "the particular facts of each

7

situation; the 'circumstances, nature, and duration' of the challenged must conditions". <u>Despain v. Uphoff</u>, 264 F.3d 965, 974 (10th Cir. 2001)(citations omitted).

In the present case, plaintiff failed to allege any conditions of confinement which might arguably implicate the Eighth Amendment. It appears, at most, that plaintiff's desire for placement in work release was not satisfied. Such frustration with programming, however, does not suggest a deprivation sufficient to establish cruel and unusual punishment.

**Motions for preliminary injunctive relief**

Plaintiff has filed two motions for preliminary injunctive relief (Docs. 6 and 14). The first seeks an order directing defendants to remove substance abuse treatment from his program plan, to refrain from removing work release from that plan, and to immediately transfer plaintiff to the Wichita Work Release Facility. The second motion seeks that relief as well as the restoration of withheld good time credits, restoration to incentive level III, and plaintiff's immediate transfer to the honor dormitory.

In order to obtain the injunctive relief he seeks, plaintiff must demonstrate: (1) he will suffer irreparable harm unless relief is granted; (2) the threatened injury outweighs the burden to the opposing party; (3) the relief would not be

adverse to the public interest; and (4) there is a substantial likelihood that he will prevail on the merits. Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir. 1992).

Because the court has concluded that plaintiff's underlying claims lacks merit, the motions for preliminary injunctive relief will be denied.

IT IS, THEREFORE, BY THE COURT ORDERED plaintiff's motion for leave to proceed in forma pauperis (Doc. 2) is granted. Collection action shall continue pursuant to 28 U.S.C. §1915(b)(2) until plaintiff satisfies the $350.00 filing fee.

IT IS FURTHER ORDERED plaintiff's motion to amend the complaint (Doc. 10) is granted.

IT IS FURTHER ORDERED plaintiff's motions for preliminary injunctive relief and a restraining order (Docs. 6 and 14) are denied.

IT IS FURTHER ORDERED plaintiff's motions for the appointment of counsel (Doc. 3), for hearing on the motion for preliminary injunction (Doc. 11), and for immediate ruling (Doc. 14) are denied as moot.

Copies of this order shall be transmitted to the plaintiff and to the Finance Office of the facility where he is incarcerated.

**IT IS SO ORDERED.**

Dated at Topeka, Kansas, this 2nd day of July, 2007.

        S/ Sam A. Crow
        SAM A. CROW
        United States Senior District Judge